UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DEXTER ANDERSON, :
    Petitioner, :
     :
    v. : Civil No. 3:15cv1364 (VAB)
     :
WARDEN D.K. WILLIAMS, :
    Respondent. :

**RULING ON MOTION TO DISMISS**

Petitioner, Dexter Anderson, has filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 challenging his security classification and conditions of confinement at the Federal Correctional Institution at Danbury ("FCI-Danbury"). *See* Pet. Writ Habeas Corpus, ECF No. 1. Respondent, Warden D.K. Williams of FCI-Danbury, has moved to dismiss the petition under Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, the motion will be GRANTED in part and DENIED in part.

**I.    Factual Allegations**

On April 23, 2004, in the United States District Court for the Eastern District of Wisconsin, a jury found Mr. Anderson guilty of one count of conspiracy to distribute more than 50 grams of crack cocaine, one count of possession with intent to distribute cocaine, one count of possession of a firearm by a felon and five counts of distribution of cocaine. *See* Mem. Supp. Pet., ECF No. 2 at 1-2. Under the Sentencing Guidelines then in effect, Mr. Anderson's "offense level of 44 and [] criminal history category of III" mandated a sentence of life imprisonment. *Id.* at 2; *see also United States v. Anderson*, 365 F. App'x 17, 18 (7th Cir. 2010).

On November 23, 2004, the district judge decided not to impose the life sentence called for by the Sentencing Guidelines because he concluded that "a life sentence was too severe

absent violent conduct." *See Anderson*, 365 F. App'x at 18. Applying *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 375 F.3d 508 (7th Cir. 2004), *aff'd*, 543 U.S. 220 (2005), the district court declined to treat the guidelines as mandatory and imposed a non-guideline sentence of 300 months, followed by twenty years of supervised release. *Id.* The court determined that "a sentence above the statutory minimum was necessary to reflect [the petitioner's] aggravating conduct" including his attempt "to retrieve a loaded gun during his arrest." *See id.*

On June 9, 2006, the Court of Appeals for the Seventh Circuit affirmed the judgment of conviction and sentence. *See United States v. Anderson,* 450 F.3d 294 (7th Cir. 2006). Since then, Mr. Anderson has filed three motions to reduce his sentence under 18 U.S.C. § 3582(c)(2). A judge in the United States District Court for the Eastern District of Wisconsin denied all three motions and the Court of Appeals for the Seventh Circuit affirmed the denials of those motions. *See United States v. Anderson*, 549 F. App'x 556, 557 (7th Cir. 2013); *United States v. Anderson*, 488 F. App'x 129, 131 (7th Cir. 2012). *Anderson*, 365 F. App'x at 19.

### A. Custody Designation at the Bureau of Prisons

The Bureau of Prisons ("BOP") is responsible for determining the classification and placement of prisoners, 18 U.S.C. § 3621, and created policies and procedures to guide it in carrying out that mandate. BOP policies indicate how to determine each inmate's "custody level," which indicates how much staff supervision a particular inmate requires. *See* Policy Statement 5100.08 ("PS 5100.08"), Ch. 6, p. 1.[1] Male correctional institutions are classified into five different security levels: Minimum, Low, Medium, High, and Administrative. *Id.* at Ch. 1 at

---

[1] Information regarding PSFs may be found at the Federal Bureau of Prisons website: https://.www.bop.gov/ under Resources. (Last visited March 1, 2017).

1. According to PS 5100.08, the "security designation" or "security level" of each inmate is based on several factors, including records from the inmate's sentencing, background information from the Judgment and reports completed by the Probation Office, the inmate's history of escapes or attempts, and Public Safety Factors ("PSFs") designated by Bureau officials. *See id.* at Ch. 4, p. 7-14.

The BOP uses PSFs to account for "certain demonstrated behaviors which require increased security measures to ensure the protection of society." PS 5100.08, Ch. 2, p. 4. BOP officials normally apply PSFs before an inmate's initial assignment to an institution, however, "additions or deletions may be made at anytime thereafter." *Id.* at Ch. 5, p. 7. The "sentence length" PSF applies to male inmates with more than ten years remaining to serve, who must be housed in at least a low security level institution, and inmates with more than twenty years remaining in their sentence, who will be housed in at least a medium security level institution. *Id.* at Ch. 5, p. 9. The "greatest severity offense" PSF applies to inmates whose "current term of confinement falls into the '"greatest severity" range, which applies to certain identified offenses including "assault." *See id.*; *see* also Offense Severity Scale, PS 5100.08 Appendix A. When an inmate's record contains this PSF, the inmate must be kept in an institution whose security level is at least "low security." *Id.* at Ch. 5, p. 7.

The BOP also designates the "Management Security Level" ("MSL") of each prisoner. The MSL "takes precedence over … the scored security level and the application of Public Safety Factors" to determine an inmate's placement. *Id.* at Ch. 5, p. 2. MSL's include "Work Cadre," which applies to inmates allowed to perform work outside the perimeter of the institution, and "Medical," which applies to inmates who are designated to certain facilities based on their medical needs. *Id.* at Ch. 5, p. 4. The BOP can also apply the MSL designations

of "lesser security" and "greater security," which override an inmate's security classification. *Id.* at p. 5.

### B. Mr. Anderson's Custody Determination

After sentencing, the Federal Designation and Sentencing Computation Center (the "Center") determined Mr. Anderson's security designation and custody classification based on a number of factors. *See* Decl. Supp. Pet Writ Habeas Corpus, ECF No. 3, ¶ 18 (hereinafter "Anderson Decl."). The Center assigned Mr. Anderson a PSF of "sentence length" and concluded that the severity of his offense was moderate and his security score level was medium. *See id.* Based on these determinations and other factors the Center designated Mr. Anderson to a medium security prison facility. *See id.*

Mr. Anderson was initially confined at the Federal Correctional Institution in Pekin, Illinois. Anderson Decl. ¶ 5; *see also* Security/Designation Form, Ex. 3.[2] In June 2008, due to a change in Mr. Anderson's management security level, FCI-Pekin officials transferred him to the Federal Medical Center in Rochester, Minnesota ("FMC-RCH"), a low security prison facility. *See id.* at ¶ 6; *see also* Custody Classification Form (May 27, 2010), Ex. 10, p. 20. In September 2010, prison officials transferred Mr. Anderson to an institution in Beaumont, Texas ("FCI-Beaumont"), citing his medical needs. Anderson Decl. ¶ 17. In April 2012, Mr. Anderson was allegedly designated to be transferred to FMC-RCH. *Id.* at ¶¶ 18-19. Eventually, prison officials did not follow through with this request and transferred him to a low security institution in Milan, Michigan ("FMC-Milan"). *Id.* at ¶ 21. In July 2014, the BOP transferred Mr. Anderson to his current placement in FCI-Danbury. *Id.*

---

[2] Mr. Anderson has attached 26 exhibits to the Declaration in Support of his Petition for Writ of Habeas Corpus (ECF No. 3). When the Court cites to an exhibit in this Ruling, it is referencing these exhibits.

### C. Alleged Retaliation against Mr. Anderson

Mr. Anderson alleges that "BOP officials … played a role in retaliating against [him] for exercising his First Amendment rights by either adding a PSF or refusing to remove the PSF for "greatest severity." Mem. Supp. Pet., 11. Mr. Anderson points to several incidents in which he complained to or challenged prison officials, prompting the alleged retaliation. First, Mr. Anderson allegedly filed an administrative remedy complaint against Julie Clark, his case manager at FMC-RCH.[3] *See* Anderson Decl. ¶ 6. Mr. Anderson alleges that he filed an administrative complaint against Ms. Clark because she "became very personal and disrespectful" towards him and "would say things … that [he] thought were inappropriate." *Id.* at ¶ 8.

Second, Mr. Anderson filed a federal lawsuit alleging that BOP staff violated his constitutional rights by "interfering with his medical treatment and retaliating against me." Anderson Decl. ¶ 18. He alleges that staff-members at FMC-RCH became aware of this lawsuit by April 2012, when he returned to FMC-RCH after his 18 months of confinement at BML. *Id.* at ¶ 19.

Mr. Anderson alleges that Ms. Clark and other prison officials retaliated against him in various ways after becoming aware of his federal lawsuit and administrative remedy complaint against Ms. Clark. *See* Anderson Decl. ¶¶ 9-15. First, he alleges that Ms. Clark retaliated against him by adding a PSF of "greatest severity" to his file. *Id.* at ¶ 13. Because of this additional PSF, Mr. Anderson became a "medium security prisoner." *Id.* The BOP allegedly "lodged" a management variable against Mr. Anderson to override the increase in his security

---

[3] According to Mr. Anderson's filings, Ms. Clark at some point began using the name Miller. *See* Anderson Decl., ¶ 20 (referencing "CMC-Miller (formally Clark)"). In the interest of consistency, the Court uses "Clark" throughout this Opinion.

status so that he could remain in a low security prison. *Id.* Despite the BOP's override, Mr. Anderson alleges that the continued application of the "greatest severity" PSF will have an impact on his future. Mem. Supp. Pet., 16. He alleges that the PSF will "ultimately interfere" with his eligibility for Halfway Houses or furloughs. *Id.*

Mr. Anderson also alleges that Ms. Clark shared information about him with U.S. Marshals, who shared it with a U.S. Attorney who used the information during a hearing on Mr. Anderson's motion to reduce his sentence. Anderson Decl. ¶ 9. He alleges that Ms. Clark shared his information with other BOP staff, prompting them to treat him like a "very dangerous prisoner" during medical trips. *Id.* at ¶¶ 10-13.

In September 2010, prison officials at FMC Rochester transferred Mr. Anderson to the low security facility at FCI-Beaumont in Beaumont, Texas. Anderson Decl. ¶ 17. In 2011, a case manager at FCI-Beaumont removed the PSF factor of "greatest severity" and reduced Mr. Anderson's offense level to moderate. *See* Male Custody Classification Form (Feb. 8, 2011), Ex. 11 (p. 31).

On April 3, 2012, prison officials at FCI-Beaumont allegedly determined that Mr. Anderson should be re-designated to a facility that was closer to his home in Wisconsin. *See Anderson Decl.* ¶ 8; Mem. Supp. Pet., 4. Mr. Anderson alleges that Ms. Clark, who was at that point a case manager coordinator ("CMC"), blocked his transfer back to FMC Rochester because he had filed lawsuits against prison officials at that facility. Mem. Supp. Pet., 6. Ms. Clark also allegedly recommended that the case manager at FCI-Beaumont give Mr. Anderson a PSF for "greatest severity" and increase his custody score. *See* Anderson Decl. ¶ 20. The case manager at FCI-Beaumont did add the PSF of "greatest severity" and raised Mr. Anderson's offense level, but maintained Mr. Anderson's security level as low. *See* April 2012 e-mails, Ex. 12, p. 32. The

case manager at FCI-Beaumont also recommended that Mr. Anderson be transferred to a low security facility closer to his home.  *See id.*

On May 7, 2012, prison officials at FCI-Beaumont transferred Mr. Anderson to FCI-Milan in Milan, Michigan, a low security facility.  *See* Anderson Decl. ¶ 21.  Prison officials at FCI-Milan refused to remove Mr. Anderson's PSF of "greatest severity."  *Id.* at ¶ 22.  In July 2014, prison officials at FCI-Milan transferred Mr. Anderson to FCI-Danbury, a low security facility.  *See* Mem. Supp. Pet., 5.  Mr. Anderson contends that the transfer was ordered in retaliation for filing civil lawsuits.  *See id.*  Mr. Anderson also contends that BOP staff at FCI-Danbury "insist" that his designation should be "greatest severity," allegedly citing the sentencing guidelines at issue in his case, despite the fact that he allegedly informed them that the designation was an error.  Anderson Decl. ¶ 25.

Generally, Mr. Anderson alleges that he has "requested that the PSF of 'greatest severity' be waived or removed."  Anderson Decl. ¶ 24.  They allegedly refused and informed Mr. Anderson that he must remain without disciplinary violations for eighteen months in order to have the PSF of "greatest severity" removed.  *See id.*

### D.  The Conditions at FCI-Danbury

At FCI-Danbury, Mr. Anderson alleges that he has lived in an open dormitory which is overcrowded and occasions "health concerns and unsanitary conditions."  Mem. Supp. Pet., 18.  Specifically, he alleges that the showers are unsanitary because of black mold, toxic fumes and rusty and contaminated water and are unsafe because the floors are slippery.  *Id.* at 20.  The air quality in the dormitory is unsafe, he alleges, because of mold and asbestos on the premises.  *See id.* at 20-21.  Mr. Anderson also alleges that the unsanitary/unsafe living conditions at FCI-Danbury caused him to have swollen lymph nodes and other respiratory issues.  *See id.* at 21-22.

Mr. Anderson alleges that the excessive number of inmates confined at FCI-Danbury has caused delays in receiving medical and dental treatment. *See* Mem. Supp. Pet., 22-23. He states that he has been approved for an MRI, a consultation with an ear, nose and throat specialist, a consultation with a cardiologist and a follow-up appointment with an orthopedist. *Id.* at 23. He contends that it often takes six months after a consultation/test has been approved to be seen by a specialist or to undergo a test. *See id.* He alleges that he has waited over a year for a routine dental cleaning and an appointment with an optometrist. *See id.*

Mr. Anderson alleges that the food served at FCI-Danbury has caused him to become sick on several occasions. Mem. Supp. Pet, 24-25. The meat is sometimes undercooked, he alleges, some food items have been contaminated by rats, and food service workers do not always handle the food in a sanitary manner. *See id.* Mr. Anderson also claims that there is an infestation of rats at FCI-Danbury and that prison officials have ignored the infestation. *See id.*

Mr. Anderson also alleges that the dormitories at FCI-Danbury are overcrowded and the BOP's removal of the cubicles that existed in the dormitories in the past has created dangerous situations. Mem. Supp. Pet, 25-26. The lack of space and privacy in the dormitories has led to fights among inmates. *See id.* Mr. Anderson alleges that he has become sick because diseases spread easily among inmates because of their close quarters in the dormitory. *See id.*

### E. Mr. Anderson's Exhaustion of Administrative Remedies

Bureau of Prisons Regulations require all inmates to express their grievances using an internal, four-step process set forth in the Bureau of Prisons' Administrative Remedy Program. *See* 28 C.F.R. § 542. This grievance procedure was adopted by the Bureau of Prisons for the stated purpose of "allow[ing] an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). The four step administrative process is as

follows: (1) the inmate must attempt informal resolution with prison staff; (2) the inmate must submit a formal written "Administrative Remedy Request" to the warden within twenty days of the incident giving rise to his claim; (3) the inmate must appeal an adverse decision from the warden to the appropriate regional director within twenty days from the denial of the formal request; and (4) the inmate must appeal the Regional Director's adverse decision to the Bureau of Prisons General Counsel's office within thirty days.  *See* 28 C.F.R. §§ 542.13(a), 542.14(a), 542.15(a).  Federal regulations require each decision-maker to respond to an inmate's request or appeal within a certain time, or to extend the response period by 20 days (at the institution or Central Office levels).  28 C.F.R. §§ 542.18.  If the inmate does not receive a response within the time allotted for reply or extension, the regulations provide, the inmate "may consider the absence of a response to be a denial at that level."  *Id.*

Mr. Anderson filed an administrative remedy request form about his complaints about the addition PSF on his record in October 2014.  Anderson Decl. ¶ 33; Request for Administrative Remedy (Oct. 29, 2014), Ex. 20, p. 41-44.  In December of that year, Warden Quay denied the request, stating that Mr. Anderson had "misinterpreted" the sentencing materials that had caused Ms. Clark to apply the PSF of "greatest severity."  *See* Letter from Warden Quay (Dec. 2, 2014), Ex. 21, p. 45.  Mr. Anderson appealed this decision seventeen days later.  *See* Regional Administrative Remedy Appeal (Dec. 19, 2014), Ex. 22, p. 46.  The appeal was denied, and Mr. Anderson appealed the denial to the BOP's central office.  *See* Response to Appeal (Feb. 11, 2015), Ex. 23, p. 48; Central Office Administrative Remedy Appeal Form (March 4, 2015), Ex. 25, p. 50.  On April 17, 2015, the Central Office responded with a short message saying that "additional time [wa]s needed to respond to the central office appeal."  Extension of Time for

Response (April 17, 2015), Ex. 25, p. 51.  Mr. Anderson has not received a response.  Anderson Decl. ¶ 33.

Mr. Anderson alleges that he did not seek to administratively resolve his complaints concerning the conditions of his confinement and his lack of medical care because he believed that if he had complained, officials at FCI-Danbury "would have transferred him before he could receive medical treatment."  Mem. Supp. Pet, 7.  He alleges that this would have caused him "further pain and mental distress" and would delayed further the treatment of his serious medical needs.  *Id.* at 7-9.

He also alleges that he believed that exhaustion of these claims "would have been 'futile' anyway and a complete waste of time."  Mem. Supp. Pet., 7.  He alleges that officials at FCI-Danbury "rubber-stamp" the responses to inmate complaints and administrative appeals without considering the grievances contained in the complaints.  *Id.* at 7-8.

### F.  The Current Legal Action

On September 14, 2015, Mr. Anderson filed this petition for habeas corpus.   He raises three grounds in support of his petition.  He contends that Bureau of Prisons officials: (1) retaliated against him for filing lawsuits and prison grievances by adding a PSF of "greatest severity" or refusing to remove or waive the PSF of "greatest severity," (2) denied him due process by continuing to assign him a PSF of "greatest severity," and (3) were deliberately indifferent to his medical needs and subjected him to unconstitutional conditions of confinement at FCI-Danbury.

Respondent moves to dismiss the petition on two grounds.  First, Respondent argues that Mr. Anderson's claims concerning his PSF assignment should be dismissed for failure to state a claim for violation of Mr. Anderson's federal constitutional rights.  Second, Respondent argues

that Mr. Anderson's Eighth Amendment claims should be dismissed because Mr. Anderson did not to exhaust his administrative remedies prior to filing his habeas petition, thus depriving the court of subject matter jurisdiction over Mr. Anderson's claims.

## II.     Standard of Review

Respondent moves to dismiss the Complaint under Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, making wo standards of review relevant.

First, in reviewing a motion to dismiss under § 12(b)(1), the Court "take[s] all the uncontroverted facts in the complaint (or petition) as true, and draw[s] all reasonable inferences in favor of the party asserting jurisdiction." *Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2016) (citation and internal quotation marks omitted). Dismissal under "Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction," is appropriate if the court "lacks the statutory or constitutional power to adjudicate [the case]." *Cortlandt St. Recovery Corp. v. Hellas Telecomms. S.à .r.L.*, 790 F.3d 411, 416-17 (2d Cir. 2015) (internal quotation marks and citation omitted). When the existence of subject matter jurisdiction is challenged, the court may properly consider "evidence outside of the complaint." *Id.* at 417 (citation omitted). A Rule 12(b)(6) motion is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 158 (2d Cir. 2003) (internal citations omitted). The Court therefore must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and decide whether it is plausible that the plaintiff has a valid claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570.  A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Although "detailed factual allegations" are not required, a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion [s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555-57.  Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and ... recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

Because Mr. Anderson filed the petition for writ of habeas corpus *pro se*, the Court must construe his filings "liberally" and interpret them "to raise the strongest arguments that they suggest."  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006); *see also Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994) (explaining that *pro se* litigants should be afforded "special solicitude" because they are not represented by counsel).  Despite the special solicitude that the Court must show Mr. Anderson out of consideration for his *pro se* status, his petition must still "include sufficient factual allegations to meet the standard of facial plausibility" to survive a motion to dismiss under Rule 12(b)(6).  *Sentementes v. Gen. Elec. Co.*, No. 3:14-CV-00131 (VLB), 2014 WL 2881441, at *2 (D. Conn. June 25, 2014) (discussing case with *pro se* plaintiff).

## II. Discussion

This Court has jurisdiction under 28 U.S.C. § 2241 to address the execution of a prisoner's sentence. *See Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001) ("A motion pursuant to § 2241 generally challenges the execution of a federal prisoner's sentence, including such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions.") (citing *Chambers v. United States*, 106 F.3d 472, 474–75 (2d Cir.1997)); *see also Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001) ("A writ of habeas corpus under § 2241 is available to a federal prisoner who does not challenge the legality of his sentence, but challenges instead its execution subsequent to his conviction.").

### A. Mr. Anderson's Exhaustion of Administrative Remedies

Respondent argues that the Court does not have jurisdiction over some of Mr. Anderson's claims because he has failed to exhaust the administrative remedies that were available to him. *See* Respondent's Mem., 3-4. The petitioner contends that he should be excused from exhausting his remedies for several reasons, including futility. *See* Mem. Supp. Pet., 7-8. Respondent claims the exhaustion requirement is jurisdictional, and does not respond to Mr. Anderson's argument that the exhaustion requirement should be excused in his case. For this reason, Respondent's motion is denied.

There is no statutory requirement that an inmate exhaust administrative remedies before filing a section 2241 petition. *See Carmona,* 243 F.3d at 634 ("[W]e note that although § 1997e(a) of the [PLRA] ... contains a statutory administrative exhaustion requirement, we have held, in the context of a § 2254 petition, that the requirements of the [PLRA] do not apply to habeas proceedings .... Doubtless the same rule should obtain in § 2241 cases as in § 2254

petitions."). The Second Circuit, however, has imposed a judicial exhaustion requirement with respect to challenges to conditions of confinement in a federal facility that are asserted in Section 2241 petitions. *See Carmona,* 243 F.3d at 634 ("Before instituting such a habeas proceeding, however, a prison inmate must first exhaust the remedies available through the BOP's Administrative Remedies Program").

In other words, the exhaustion requirement for Section 2241 petitions is "prudential, not statutory," *Zucker v. Menifee*, No. 03 CIV. 10077 (RJH), 2004 WL 102779, at *4 (S.D.N.Y. Jan. 21, 2004), and the Court may excuse a petitioner's failure to exhaust at its discretion. *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003). The Second Circuit has held that exhaustion may be excused where: "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." *Beharry*, 329 F.3d at 62 (quoting *Able v. United States*, 88 F.3d 1280, 1288 (2d Cir. 1996)).

Mr. Anderson concedes that he did not exhaust his administrative remedies with regard to his conditions of confinement claims or his medical treatment claims. *See* Mem. Supp. Pet., 7-8. He contends that the Court should excuse him from the exhaustion requirement because he might suffer irreparable harm if he were required to do so. *Id.* at 7, 9. Mr. Anderson further contends that it would have been futile to attempt to exhaust his remedies because the BOP never grants relief to inmates who utilize the Administrative Remedy Program. *Id.* at 7-8.

Respondent does not acknowledge or address the exceptions to the exhaustion requirement as set forth by the Second Circuit or Mr. Anderson's argument that he meets two of the exceptions to the exhaustion requirement with regard to his conditions of confinement and medical claims. Accordingly, the motion to dismiss is denied without prejudice to Respondent

having the ability to raise the failure to exhaust argument in a motion for summary judgment.

### B. Security Classification Claims

Mr. Anderson's first two claims concern the allegedly improper inclusion of a PSF of "greatest severity" in his file. In his first ground for relief, Mr. Anderson alleges that federal prison officials at various correctional facilities have violated his First Amendment rights by retaliating against him for filing lawsuits and prison grievances by adding or refusing to remove the PSF. Mem. Supp. Pet., 9. Next, he contends that the imposition of the PSF violated the due process clause of the Fifth Amendment. *Id*. at 12.

Respondent argues that Mr. Anderson's claims concerning his security classification should be dismissed under Rule 12(b)(6). Specifically, Respondent states that "habeas relief is not warranted," because Petitioner "has no liberty interest in his security level, custody classification, or place of confinement," and therefore has not established that the Respondent violated his rights under the due process clause. Respondent's Mem., 3. The Court agrees with Respondent with respect to the due process claim, but not the First Amendment claim.The Fifth Amendment's Due Process Clause protects persons against "depriv[ations] of life, liberty, or property." U.S Const. Amend. V. In order to establish a violation of due process, a petitioner must demonstrate that he or she possessed a life, liberty or property interest, a government official deprived him of one of those interests, and the procedures provided prior the deprivation of that interest were constitutionally inadequate or insufficient. *See Kerry v. Din*, ___ U.S. ___, 135 S. Ct. 2128, 2132 (2015) (citations omitted). "[I]t remains the case that no process is due if one is not deprived of 'life, liberty, or property.'" *Id.* (citing *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (per curiam)).

The Supreme Court has concluded that a federal prisoner has no liberty interest "sufficient to invoke due process" in his or her "prisoner classification and eligibility for

rehabilitative programs in the federal system." *Moody v. Daggett.* 429 U.S. 78, 88 n.9 (1976) ("We have rejected the notion that every state action carrying adverse consequences for prison inmates automatically activates a due process right. … Congress has given federal prison officials full discretion to control these conditions of confinement, 18 U.S.C. § 4081, and petitioner has no legitimate statutory or constitutional entitlement sufficient to invoke due process."); *see also Montanye v. Haymes*, 427 U.S. 236, 242 (1976) ("As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight.").

Mr. Anderson claims that Bureau of Prisons' officials have failed to follow the procedures applicable to the assignment of a PSF of "greatest severity", in violation of the due process clause. *See* Mem. Supp. Pet., 12. Federal courts have consistently held that a federal prisoner has no liberty interest in his or her security classification based on a prison official's determination of the applicability of a particular PSF. *See Marti v. Nash*, 227 F. App'x 148, 150 (3d Cir. 2007) (relief unavailable in § 2241 habeas petition because petitioner had no liberty interest in security classification based on assignment of the "greatest severity" PSF); *Baranwal v. Stone*, No. CV 314-098, 2015 WL 171410, at *3 (S.D. Ga. Jan. 13, 2015) ("[B]ecause federal prisoners do not possess a liberty interest in their security classification, a claim that the PSF deprives Petitioner of liberty without due process in violation of the Fifth Amendment must fail."), appeal dismissed (Mar. 9, 2015); *Rodriguez-Leon v. Zickefoose*, No. 111-1172(RBK), 2012 WL 32924, at *3 (D.N.J. Jan. 3, 2012) ("Petitioner has no liberty interest in avoiding the assignment to him of a Greatest Severity Public Safety Factor. Congress has delegated the authority to determine a prisoner's appropriate classification and place of confinement to the BOP."); *Embrey v. Sepenak*, No. 0:11-CV-00119-HRW, 2012 WL 1205721, at *4 (E.D. Ky.

Apr. 10, 2012) ("The incidental effect of a PSF does not create a due process violation, even if the PSF classification adversely impacts a federal inmate's eligibility to participate in certain BOP programs, privileges, and incentives"). Because of the discretion afforded federal prison officials in determining an inmate's security level, the Court concludes that Mr. Anderson does not have a liberty interest in his security classification based on the BOP's assignment of the PSF of "greatest severity."

Furthermore, Mr. Anderson has not alleged that the assignment of the PSF of "greatest severity" has caused him to suffer an atypical or significant hardship compared to the ordinary conditions of confinement that he might expect to experience in federal prison. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995) (liberty interests protected by the Due Process Clause "will be generally limited to freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.") (citations omitted). The only potential disadvantages of the PSF that Mr. Anderson mentions is that it might impact his eligibility for release to a halfway house or a release on a furlough. *See* Mem. Supp. Pet., 16. These possible consequences do not constitute atypical or significant hardships that would implicate a protected liberty interest. *See Becerra v. Miner*, 248 F. App'x 368, 370 (3d Cir. 2007) ("Being classified with a PSF of deportable alien and its resulting consequences of disqualification for certain programs, as with any other security classification, is not outside what a prisoner may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law.") (internal quotation marks and citations omitted); *Pugliese v. Nelson,* 617 F.2d 916, 923 (2d Cir. 1980) (federal inmates had no due process right to avoid their classification as Central Monitoring Cases, a designation that was likely to delay[] or preclude[] a prisoner from being favorably considered for furloughs, transfer, work releases, participation in community activities and even early parole" in the future because the inmates were not entitled

to those freedoms as part of their convictions or sentences); *Reyes v. Holland,* No. 0:11-CV-00090-HRW, 2012 WL 639469, at *3 (E.D. Ky. Feb. 27, 2012) (holding that prisoner failed to show that his PSF of "Deportable Alien," which deprived him of the ability to seek a transfer to prison near his family, constituted an atypical or significant hardship in relation to ordinary incidents of prison life).

Petitioner has also claimed that BOP officials' imposition of the PSF of "greatest severity" violated the First Amendment's protection against retaliation.[4]  Respondent did not address this in his motion to dismiss.  Furthermore, Respondent's argument about Mr. Anderson's due process claim does not apply to Mr. Anderson's retaliation claim, even though both claims hinge on the allegedly erroneous application of a PSF of "greatest severity."

To establish his retaliation claim, Mr. Anderson must show that (1) he engaged in constitutionally protected speech or conduct; (2) defendants took some adverse action against him; and (3) there was a causal connection between the protected activity and the adverse action. *See Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004). The Second Circuit has defined an "adverse action," in the prison context, as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising ... constitutional rights.'" *Gill*, 389 F.3d at 381 (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir.2003)).

The fact that a prison official's conduct does not violate an inmate's due process rights does not mean that the conduct would not satisfy the "adverse action" requirement.  *See Allah v. Poole*, 506 F. Supp. 2d 174, 186 (W.D.N.Y. 2007) (citing cases).  Courts have held that inmates who were transferred to another housing unit or to a psychiatric facility, denied access to a prison

---

[4] This ground was inadvertently eliminated from the electronic copy of Mr. Anderson's petition, which references a ten page document, but includes only the page numbered 2, 4, 6, 8, and 10.  *See* Pet. Writ Habeas Corpus.  Mr. Anderson's Memorandum in Support includes a discussion of a retaliation claim, titled "ground one."  *See* Mem. Supp. Pet., 9-12.

program, and received "negative parole recommendations" suffered adverse actions. *See Davis v. Kelly*, 160 F.3d 917, 920 (2d Cir.1998) ("prison authorities may not transfer an inmate in retaliation for the exercise of constitutionally protected rights."); *Ramsey v. Goord*, 661 F.Supp.2d 370, 399 (W.D.N.Y.2009) ("It is also undisputed that Defendants' removal of Plaintiff from the CAD Program was an adverse action, in satisfaction of the second element of a retaliation claim"), adopted, 661 F.Supp.2d 370 (W.D.N.Y.2009); *Rheaume v. Pallito*, No. 2:15-CV-135-WKS-JMC, 2016 WL 3277318, at *10 (D. Vt. Apr. 20, 2016), report and recommendation adopted, No. 2:15 CV 135, 2016 WL 3344223 (D. Vt. June 14, 2016) ("Courts have held that 'negative parole recommendations,' such as those alleged here, may constitute adverse action for purposes of considering a retaliation claim at the motion to dismiss stage.").

The alleged addition of a PSF for "greatest severity" on Mr. Anderson's record can be considered an "adverse action" for the purposes of his retaliation claim. *Council v. Nash,* No. CIV. 06-07 (RBK), 2007 WL 1686512 (D. N. J. June 8, 2007), at *5 (concluding that the plaintiff "suffered an adverse action when he was assigned a PSF which prevented his transfer to a lower security level of custody."). For this reason, the Court cannot dismiss Mr. Anderson's retaliation claim at this point, even though it will dismiss the due process claim allegedly arising from the same factual allegations.

Because Mr. Anderson has no liberty interest in his security classification based on the assignment of a particular PSF, his claim that prison officials violated his due process rights by adding the PSF of "greatest severity" or refusing to remove the PSF of "greatest severity" fails to state a claim upon which his request for relief may be granted. Respondent has not moved to dismiss Mr. Anderson's retaliation claim concerning the PSF of "greatest severity" and the Court sees no reason to do so based on Respondent's arguments concerning the other grounds of Mr.

Anderson's petition. The motion to dismiss is granted as to the second ground of the petition, but not the first or third.

### IV. Conclusion

The Motion to Dismiss [**ECF No. 14**] is **GRANTED** as to the second grounds of the petition and **DENIED** without prejudice as to the first and third ground of the petition. The petitioner's Motion for a Status Conference [**ECF. No. 24**] is **DENIED** as moot.

SO ORDERED this 3rd day of March 2017 at Bridgeport, Connecticut.

/s/ Victor A. Bolden_____
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE